IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

DANNY A. CROMEANS, JR.                                          PLAINTIFF

      v.                         Civil No. 4:10-cv-04040

CIRCUIT JUDGE JOE E. GRIFFIN;
and DEPUTY PROSECUTING
ATTORNEY JOHN GRIFFIN                                           DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Danny A. Cromeans, Jr. (hereinafter Cromeans), an inmate in the Maximum Security Unit of the Arkansas Department of Correction, Tucker, Arkansas, filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds *pro se*. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2007), the Honorable Harry F. Barnes, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.

The case is currently before me for pre-service screening under the provisions of the Prison Litigation Reform Act. Pursuant to 28 U.S.C. § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

### Background

In 2002, Cromeans was convicted of kidnaping and rape and sentenced to twenty years and life imprisonment, respectively. *Cromeans v. State*, No. 02-1186, 2003 WL 21040217 (Ark. May 8, 2003). The trial judge was Judge Joe E. Griffin. *Id.* Cromeans' direct appeal from the conviction was found to be meritless. *Id.*

Cromeans filed two petitions for post-conviction relief pursuant to Rule 37 of the Arkansas Rules of Criminal Procedure. *See Cromeans v. Norris*, No. 5:04-cv-00059, 2006 WL 3333783, 2 (E.D. Ark. Nov. 15, 2006). His petitions were denied. *Id.*

His federal *habeas corpus* petition was also rejected. *See Cromeans v. Norris*, No. 5:04-cv-00059, 2006 WL 3333783 (E.D. Ark. Nov. 15, 2006). The facts presented at trial were summarized by the Court as follows:

> At the trial, the victim testified that, during the early morning hours of December 18, 2000, Petitioner knocked on her door and told her that he was a friend of Johnny Saunders, that Saunders had been in a car wreck just down the road, and that Saunders had asked him to come to the victim's house for help. After making some phone calls, Petitioner left. The victim testified that, a short time later, she was awakened by Petitioner "knocking very aggressively" on her door. This time, he had a shotgun, told her he was a cop, grabbed her by the hair, and pulled her outside to his truck. The victim testified that Petitioner drove her around for several hours, raped her twice, repeatedly threatened to kill her, and assaulted her. She finally persuaded him to take her home. She then went to her mother's house, where the police were contacted. Petitioner was arrested later that day based on information from a business card that the victim said she took from the dashboard of his truck. State crime lab experts testified that a pubic hair found on the victim's underwear was microscopically similar to Petitioner's hair, that DNA extracted from semen on the victim's underwear matched Petitioner's DNA, and that the probability of selecting an individual at random from the Caucasian population with the same genetic markers identified on the underwear was approximately one in three billion. Two inmates, James Davis Bridges and Elwyn Graham, testified that, while they were incarcerated with Petitioner, he told them about raping the victim. Also testifying for the state were Saunders, the victim's mother, various law enforcement officers, and a man who helped Petitioner and the victim on the night in question, when Petitioner's truck was stuck at the end of a rural road.

*Cromeans*, 2006 WL 3333783, *1 (footnote and citations to the trial transcript omitted).

Cromeans presented multiple arguments in support of his *habeas* petition. Two arguments he presented were that the prosecutor presented testimony from inmate witnesses Graham and Bridges which the prosecutor should have known was false or perjured and that a conflict of interest

-2-

existed because the victim was related to the jury foreman, the judge, the deputy prosecuting attorney, defense counsel, the arresting officer, and key state witness Graham. *Cromeans*, 2006 WL 3333783, 2. Cromeans was found to have procedurally defaulted on these claims because he failed to fairly present the substance of the claim to the appropriate state court. *Id.* at 3. The court rejected Cromeans' argument that his procedural default was excused because of the following new evidence: affidavits by two state witnesses, James Davis Bridges and Elwyn Graham, asserting they had lied at Cromeans' trial; and the existence of family relationships between many of the trial participants. *Id.* at 5-6.

The court noted that while Bridges' affidavit was not available until April 2004, "the underlying factual basis-that Bridges and Graham lied at trial-would have been known to the Petitioner at the time of their testimony, at the time of Petitioner's direct appeal, and at the time of his post-conviction proceedings." *Cromeans*, 2006 WL 3333783, 5. With respect to the existence of family relationships, the court noted that "[i]f true, the extent of the[] family relationships is remarkable." *Id.* at 8. However, it found the family relationships alleged to exist were insufficient to satisfy either the cause-prejudice or actual innocence requirement. *Id.*

In this case, Cromeans maintains his constitutional rights to due process and a fair trial were violated because Joe E. Griffin, the Judge at his state criminal trial, is "kin to" the deputy prosecuting attorney, John Griffin. He maintains they helped "set the jury" because the "victim['s] step-mother['s] maiden name is Griffin and she is married to a Max Knight that was a cousin to the jury foreman," Robert L. Knight. Cromeans also maintains the following relationships existed between other key individuals: the victim, the arresting officer, Todd Scott, and an inmate who testified against him, E. Graham, are all related; the victim's mother is either related to Graham or the Judge

and deputy prosecutor; and the arresting officer, Todd Scott, said he was related to Robert Knight, the jury foreman.

Cromeans alleges Robert Knight told the other jurors to give him a life sentence. He asserts the life sentence was illegal. Cromeans also argues the testimony of the two fellow inmates was prejudicial to him and after the trial was over both inmates said they lied.

As relief, Cromeans asks that his conviction be reversed and a new trial ordered. He also asks for an award of compensatory and punitive damages.

## Discussion

This civil rights action is subject to dismissal. First, Joe Griffin, a Lafayette County Circuit Judge, is immune from suit. *Mireles v. Waco*, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991)("Judicial immunity is an immunity from suit, not just from ultimate assessment of damages."). *See also Duty v. City of Springdale,* 42 F.3d 460, 462 (8th Cir. 1994). "Judges performing judicial functions enjoy absolute immunity from § 1983 liability." *Robinson v. Freeze*, 15 F.3d 107, 108 (8th Cir. 1994). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman*, 435 U.S. 349, 356-57, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978).

Judicial immunity is overcome in two situations: (1) if the challenged act is nonjudicial; and (2) if the action, although judicial in nature, was taken in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11. It is clear from the allegations of the complaint that neither situation applies here.

In the past, claims for declaratory and injunctive relief "have been permitted under 42 U.S.C.

§ 1983 against judges acting in their official capacity." *Nollet v. Justices of Trial Court of Com. of Mass.*, 83 F. Supp. 2d 204, 210 (D. Mass. 2000), *aff'd without op.,* 248 F.3d 1127 (1st Cir. 2000)(*citing Pulliam v. Allen,* 466 U.S. 522, 104 S. Ct. 1970, 80 L. Ed. 2d 565 (1984)).  "However, in 1996 Congress passed the Federal Courts Improvement Act ("FCIA"), Pub. L. No. 104-317, Title III § 309(c), 110 Stat. 3847, 3853, which legislatively reversed *Pulliam* in several important respects." *Nollet*, 85 F. Supp. 2d at 210.  As amended by the FCIA § 1983 now precludes injunctive relief against a judicial officer "for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable."  42 U.S.C. § 1983.

Cromeans does not allege that either of these prerequisites for injunctive relief are met.  *See e.g., Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999)(holding injunctive relief against a quasi-judicial official is barred if the plaintiff fails to allege a violation of a declaratory decree or the unavailability of declaratory relief); *Fox v. Lee*, 99 F. Supp. 2d 573, 575-576 (E.D. Pa. 2000)(claim for injunctive relief dismissed where plaintiff's complaint fails to allege that either of the prerequisites to injunctive relief were met); *Ackermann v. Doyle*, 43 F. Supp. 2d 265, 273 (E.D. N.Y. 1999)(dismissing action against judicial officers because plaintiff failed to allege that a declaratory decree was violated or the declaratory relief was unavailable).  Thus, to the extent Cromeans seeks injunctive relief his claims are subject to dismissal.

Second, John Griffin, the deputy prosecuting attorney, is immune from suit.  The United States Supreme Court, in *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S. Ct. 984, 995, 47 L. Ed. 2d 128 (1976), established the absolute immunity of a prosecutor from a civil suit for damages "in initiating a prosecution and in presenting the State's case."  *Id.*, 424 U.S. at 427.  This immunity extends to all acts that are "intimately associated with the judicial phase of the criminal process."

*Id.*, 424 U.S. at 430.   *See also Buckley v. Fitzsimmons*, 509 U.S. 259, 113 S. Ct. 2606, 2615, 125 L. Ed. 2d 209 (1993)(Prosecutor acting as an advocate for the state in a criminal prosecution is entitled to absolute immunity.  A prosecutor acting in an investigatory or administrative capacity is only entitled to qualified immunity).  Based on the allegations of the complaint, it is clear John Griffin is entitled to absolute immunity.  *See Reasonover v. St. Louis County, Mo*, 447 F.3d 569, 580 (8th Cir. 2006)(Prosecutor absolutely immune from a civil conspiracy charge when his alleged participation in the conspiracy consists of otherwise immune acts.  Even if the prosecutor knowingly presented false, misleading, or perjured testimony or withheld exculpatory evidence, he is absolutely immune from suit).  *See also White v. Bloom*, 621 F.2d 276, 280 (8th Cir. 1980)(absolute immunity for § 1983 claims extends to § 1985 claims); *Stankowski v. Farley*, 487 F. Supp. 2d 543, 552 (M.D. Pa. 2007)(prosecutorial immunity extends to conspiracy claims brought under § 1985).

To the extent the complaint seeks injunctive relief, I find the claim not cognizable.  While the Supreme Court has not held that this immunity insulates prosecutors from declaratory or injunctive relief, *see Pulliam v. Allen*, 466 U.S. 522, 104 S. Ct. 1970, 80 L. Ed. 2d 565 (1984), a Plaintiff must show some substantial likelihood that the past conduct alleged to be illegal will recur.  Cromeans can make no such showing here.  Further, injunctive relief is not appropriate where an adequate remedy under state law exists.  *Id.*, 466 U.S. at 542 & n.22.  *See also Bonner v. Circuit Court of St. Louis,* 526 F.2d 1331, 1336 (8th Cir. 1975).

Third, Cromeans' claims are barred by the statute of limitations.  Section 1983 does not contain its own statute of limitation.  Instead, causes of action under § 1983 are governed by "the most appropriate or analogous state statute of limitations."  *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987)(§ 1981 case).  *See also Wilson v. Garcia*, 471 U.S. 261, 268 (1985)(§ 1983 case);

*Bell v. Fowler*, 99 F.3d 262, 265-266 (8th Cir. 1996)(§ 1985 case). In Arkansas, this is the three year personal injury statute of limitations, Ark. Code Ann. 16-56-105(3). *See Miller v. Norris*, 247 F.3d 736, 739 (8th Cir. 2001)(Ark. Code Ann. § 16-56-105(3) is the statute of limitations applicable to § 1983 cases). Cromeans' civil rights causes of action accrued when he knew or had reason to know of harm constituting the basis of the action. *See Nasim v. Warden, Maryland House of Corrections*, 64 F.3d 951, 955 (4th Cir. 1995).

Cromeans criminal trial was held in July of 2002. In connection with the federal *habeas corpus* action, Cromeans submitted a sworn affidavit from Bridges dated April 15, 2004. *Cromeans,* 2006 WL 3333783, 5. Moreover, if Cromeans "did not tell Graham and Bridges that he raped the victim, he knew all along that their testimony was false and he could have developed a claim on that basis at the appropriate time in state court." *Id.* With respect to the family relationships, "[i]t was evident even before trial that the judge and deputy prosecuting attorney shared the same last name and, in a small community like Lafayette County, any disqualifying relationship would be common knowledge in legal circles." *Id.* at 9. "Similarly, it became apparent during voir dire that one of the state's announced witnesses shared the same last name as a prospective juror. . . . The name similarities were not hidden and should have alerted Petitioner to the possibility of potentially prejudicial family relationships." *Id.* At the very latest, Cromeans was aware of the alleged constitutional violations forming the basis of this suit by April of 2004. The complaint in this case was filed on February 24, 2010.

Finally, Cromeans may not use the civil rights statutes as substitute for *habeas corpus* relief. In other words, he cannot seek declaratory or injunctive relief relating to his confinement and/or conviction. *See e.g., Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Heck v. Humphrey*, 512 U.S.

477, 483-89 (1994); *Preiser v. Rodriquez*, 411 U.S. 475, 500 (1973)(habeas corpus is the exclusive remedy for prisoners attacking the validity of their conviction or confinement).

## Conclusion

For the reasons stated, I recommend that the motion to proceed *in forma pauperis* (Doc. 1) be denied and complaint be dismissed prior to service of process. The claims asserted are frivolous, fail to state claims upon which relief may be granted, and are asserted against individuals immune from suit. 28 U.S.C. § 1915A(b). The dismissal of this action will constitute a "strike" under 28 U.S.C. § 1915(g). The Clerk of Court should be directed to place a § 1915(g) strike flag on the case.

**Cromeans has fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. Cromeans is reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **14th day of April 2010.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE